JULIUS MEYERS, Plaintiff, *v.* THE CITY OF NEW YORK et al., Defendants.

(Supreme Court, New York Special Term, October, 1900.)

1. **Taxpayer's action — Not maintainable for official mistake or error of judgment.**

    A taxpayer's right to maintain a statutory action to prevent city officials from wasting or injuring the estate of the city is limited to cases where the waste or injury is likely to result from illegal, wrongful or dishonest official acts, and the remedy is not applicable to cases of innocent mistake or error of judgment upon the part of the officials.

2. **Same — Complaint — Reasonable requirements of bidders for a bridge contract — Waste.**

    A complaint, in such an action, alleging that, by the terms of an advertisement for bids for steel and masonry for approaches to a bridge over the East river, the city required bidders to have a plant which had been in successful operation on similar work for at least one year, that " finished steel ", a very small item of the work, was required not to contain certain chemical elements in excess of specified limits, and that in doing the work, the provisions of the Labor Law must be followed, held not to make out a *prima facie* case of a waste of the estate of the city. Such provisions are not unreasonable, nor do they stifle competition or illegally increase the cost of the bridge.

3. **Statute — Not to be declared unconstitutional at Special Term.**

    Where a statute (the Labor Law) has several times been before the Appellate Division under circumstances where its constitutionality might properly have been drawn in question and no opinion against its validity has been there expressed, the Special Term will not subsequently declare the statute unconstitutional.

MOTION for an injunction *pendente lite.*

Kellogg & Rose, for plaintiff.

John Whalen (Corporation Counsel) and George Hill, for defendants.

GILDERSLEEVE, J.   The plaintiff moves for an injunction *pendente lite,* enjoining the defendants from entering into any contract for the work of building the approaches on the Manhattan and Brooklyn sides of the new East River bridge, and from paying out any money under any contract, in pursuance of the defendants' advertisement for bids.   The complaint avers, in substance, apart from formal allegations reciting certain acts of the Legislature, that the plaintiff is a taxpayer of the city of New York; that in July and August last the defendants advertised for sealed bids and estimates for furnishing materials for and constructing the steel and masonry approaches on the Brooklyn and Manhattan sides of the bridge, in accordance with a proposed form of contract and drawings and specifications therefor; that one of the provisions in the advertisement was that bids would be received only from such parties as have the requisite plants and facilities which have been in successful operation on work of similar character for at least one year; that the form of contract proposed by the defendants contained a provision that the contractor should agree to comply with the provisions of the Labor Law, and that in default thereof the contract should be void.   The complaint further alleges that it was also provided that said proposed contract should contain a provision that the " finished steel " shall not contain certain chemical elements to exceed specified limits.   The complaint also states, upon information and belief, that the proposed contract, specifications and advertisements for bids were fraudulently prepared and issued, and, that the requirements of the advertisement, that bids would be received only from such parties as had the requisite plant and facilities, which had been in successful operation on work of similar character for at least one year, and of the specifications, relating to the " finished steel," above mentioned, were unreasonable and unfair, and fraudulently prepared and issued, with the purpose and intent of limiting competition and confining it to a small class of bidders, as, by said requirements, competent and reliable bidders, with the requisite plant and facilities, desiring to submit bids for the doing of said work, were prevented from doing so; that the requirements as to the elements of finished steel prohibited the furnishing of steel of any other company than the Carbon Steel Company, whose steel alone meets those requirements; that the provision,

requiring the contractor to conform to the Labor Law, would oblige him to pay more for labor employed by him than he would have to pay, if allowed to make his own wages for labor only by the law of supply and demand, and if he were not restricted to employing citizens of this State. The complaint further avers, on information and belief, that the commissioners are about to enter into contracts with the successful bidders in the form prescribed in the advertisement. The plaintiff charges that the award of any contract by the defendants for the work advertised would be illegal official acts; that the interests of the taxpayers of the city of New York, including the plaintiff, would be injured thereby, and the city be compelled to pay for work under illegal contracts, greatly to the damage of the city and its taxpayers. The plaintiff prays judgment, permanently restraining the defendants from entering into any contract for the work mentioned in the complaint, and directing that the work called for in the advertisements be readvertised and relet; and that the defendants be enjoined from paying out any moneys of the city of New York, under the advertisement, or under any contract entered into in pursuance thereof.

On the part of the defendants the affidavits of the commissioners and of their chief engineer and principal assistant engineer were read in opposition to the motion. They deny the principal charges of the complaint; in technical phraseology they deny the " equity of the bill." Mr. Buck, the chief engineer, denies that the Carbon Steel Company is the only company which manufactures steel which meets the requirements and conditions of the specifications, and says there are at least six other companies which manufacture such steel, and that any manufacturer of open hearth steel can readily fit his works for producing steel of the kind required by the specifications; and he specifies twenty manufacturers of steel who, he is informed and believes, are prepared to manufacture steel of the kind and quality called for by the specifications.

Mr. Nichols, the principal assistant engineer to the commissioners, states that he believes that the requirement, that bids should only be received from parties who have the requisite plant and facilities, and which have been in successful operation on work of similar character for at least one year, was not an unreasonable nor unfair requirement, and that it was necessary

in order to secure the highest degree of excellence and material used in the work. He also states that the provision, relating to the quality of " finished steel," is reasonable and fair; and he denies that the requirements as to " finished steel " prohibit the furnishing of steel by any other than the Carbon Steel Company, or that that company is the only one which manufactures steel meeting the requirements of the specifications. He also states that more than ninety-nine and one-half per cent. of the steel called for by the specifications is rolled steel, to which those requirements do not apply, and that the elements mentioned in the complaint, required for " finished steel," are for castings, and that those castings do not constitute more than one-half of one per cent. of the 18,000 tons required for the work; and that that class of work is not now, and never has been, made by the Carbon Steel Company, but is now being made for the steel towers of the bridge, under similar requirements, by the Benjamin Atha & Illingworth Company, of Newark, N. J., and the American Steel Castings Company, of Pennsylvania. He also says that steel castings, of the character required by the specifications, can be readily made by any responsible steel castings company in this country, and that other companies, besides those before mentioned by him, are prepared to make such material; also, that in addition to the Carbon Steel Company, steel fully complying with the specifications can be made at the works of six other concerns.

The first confronting question touches the status of the plaintiff. A taxpayer's right to maintain a suit against municipal officers is confined to cases in which waste or injury are likely to result from " Illegal, wrongful or dishonest official acts." It was " not intended to subject the official action of boards * * * and municipal bodies, acting within the limits of their jurisdiction and discretion, but which some taxpayer might conceive to be unwise, improvident or based on errors of judgment, to the supervision of the judicial tribunals." Talcott v. City of Buffalo, 125 N. Y. 286. So, also, the Court of Appeals, in a subsequent case, says: " It is absurd to suppose that the legislature, by the statute, intended to draw into the preventive jurisdiction in equity, at the instance of any taxpayer, any proposed illegal official act, irrespective of the fact whether the act sought to be restrained involves a waste of public property," etc. Rogers v.

O'Brien, 153 N. Y. 362.   Evidently, the waste spoken of in the statute is one which is the consequence of a palpable violation of law, or of corrupt designs, not of innocent mistake or error of judgment.   In this case, no such waste as the statute contemplates can be apprehended, for, although the complaint charges the defendants with having fraudulently made and issued the form of contract, specifications and advertisement, the allegation of fraud is, in itself, a mere conclusion, and is unsupported by any statement of facts or by any proof; moreover it is disproved by the defendants.   But, assuming that injury will accrue to the city, if the commissioners enter into contracts embodying the provisions of the Labor Law, because compliance with it will cause an increase in the expense of the work, that form of injury is not the " waste " of the statute, for the law expressly requires that all municipal contracts shall embody those provisions.   Nor, assuming that, as plaintiff's counsel argues, the Labor Law is unconstitutional, would a contract made by these defendants, embodying its provision as to the hours of labor and the wages to be paid for labor, be illegal in the sense of the statute.   Laws of 1892, chap. 301.

That illegality can only be predicated of a contract made in *violation* of an existing law, whereas, upon the plaintiff's own showing, the defendants here propose to enter into contracts strictly *conforming* to a certain law, by the insertion of specific provisions, which that law in terms requires shall enter into them.   This is in obedience to the law, and cannot be an illegal act; it must be so, even though the law in question be unconstitutional, for it is not to be supposed that the Legislature, by the word " illegal," in an act of 1892, had in mind a contract made in strict conformity to its own enactment.   It would be a gross solecism to say that the Legislature could contemplate the invalidity of its own acts.   The question is not whether a contract embodying provisions based on an unconstitutional law is illegal, but whether the illegality, complained of in this case, is the particular form of illegality mentioned in the statute, under which the plaintiff claims a standing in this case.

As to the effect of limiting competition to a small class of bidders, in causing an increase of the cost of the work, which is charged against the defendants, there is no reason to apprehend any such result, for it is amply shown by the affidavits, read on

the part of the defendants, that, so far as respects the require-ments for " finished steel," there are twenty concerns which now do, or easily can, produce that kind of steel.

So that it appears from these considerations that the appre-hension of waste, which alone justifies the interference of the plaintiff, is unfounded. Whether the commissioners have, in fact, acted wisely or not, in selecting and insisting upon the use of a certain kind of steel in the construction of the bridge, it is not for the court to sit in judgment upon the exercise by them of that discretion, which is vested in them by the Legislature. For aught that appears before me, I must assume that they have acted honestly and wisely. Upon their face, or, as explained by the defendants, the requirement, relative to the article of " finished steel," and the provision limiting bids to parties who have plants and facilities already sufficiently tested, bear the impress of prudent foresight and sound professional judgment on the part of the engineers employed on the work, and must commend themselves to general approval. Practically, the provision re-lating to finished steel is one of small importance, in view of the fact that it constitutes but one-half of one per cent. of the whole 18,000 tons called for by the specifications. The manifest purpose of the requirements and conditions, prescribed by the commissioners, was to secure such results in the work as would make the structure durable and useful. At all events, they can-not be said to be so unreasonable or unfair as to constitute an abuse of the discretion which the Legislature has intrusted to the commissioners. So far as the policy of the commissioners may tend to limit competition, it must be remembered that the purpose of the law, in requiring municipal corporations to invite competition for public works, is based on sound economic con-siderations; it was never intended that municipal commissions should preside irresponsibly over the competition of unqualified bidders, merely for the purpose of furthering the interests of business. The first consideration in a work of this magnitude is safety and permanence, and all conditions and qualifications affecting bidder and contract must tend to secure these.

The Labor Law, so-called, has been before the Appellate Division on several occasions, when its constitutionality might properly have been drawn in question; but no opinion against the validity of the law seems to have been expressed, and

I do not feel disposed to depart from the rule, of judicial propriety at least, that a single judge, sitting at Special Term, should not, except in a palpable case, assume to pronounce an act of the Legislature a violation of the Constitution. But the plaintiff, as I view his position, has not established a sufficient status to maintain this action, nor, aside from this question, shown meritorious grounds for an injunction.

The motion is denied, with ten dollars costs.

Motion denied, with ten dollars costs.