WILLIAM P. KNOWLES, Appellant, *v.* THE CITY OF NEW YORK et al., Respondents.

1. PLEADING — INSUFFICIENCY OF GENERAL ALLEGATION OF FRAUD. General allegations of fraud are of no value in stating a cause of action; the facts or intent must be stated in such a manner that the court may see whether they were fraudulent or not.

2. NEW YORK CITY — POWER OF NEW EAST RIVER BRIDGE COMMISSIONERS — L. 1895, CH. 789 — PROVISIONS IN SPECIFICATIONS LIMITING COMPETITION NEITHER ILLEGAL NOR FRAUDULENT.   General allegations in a taxpayer's action to annul a contract made by the commissioners of the New East River bridge in the city of New York for the construction of the bridge, that the commissioners fraudulently prescribed in their notices and specifications that proposals would be received from those bidders only who possessed plants requisite to do the work and whose plants had been in successful operation for at least one year, and that there would be excluded steel containing more than a specified percentage of foreign elements "with the purpose and intent of limiting competition and confining the same to a small class of bidders," and also charging that the cost of the work was increased thereby, in the absence of any allegations of fact except the statement that their action was taken with the purpose and intent of limiting the class of bidders, are insufficient to support the charge of fraud, since under the act directing the construction of the bridge (L. 1895, ch. 789, § 3) the power of the commissioners, which was not limited or qualified by subsequent charter provisions, was plenary and they were not limited to the performance of the work by contract or by competition, and, therefore, their intent to limit competition, both in the class of construction or as to character of material, was in itself neither illegal nor fraudulent.

3. INSERTION OF INVALID PROVISIONS OF LABOR LAW DOES NOT RENDER CONTRACT VOID.   The fact that the commissioners required the insertion of provisions of the Labor Law in the contract which were subsequently held invalid, even if their action was illegal, does not make it fraudulent,

and the insertion of such provisions in the contract does not render it void assuming that they increased the cost of the work; the contract may be enforced, although but partially performed, especially as the commissioners, if the invalidity of such provisions avoided the contract, might have immediately, without competition or advertisement, entered into a new contract with the same contractor, and they, therefore, had power to waive illegal conditions and to continue the contract in force.

*Knowles* v. *City of New York,* 74 App. Div. 632, affirmed.

*Knowles* v. *Pennsylvania Steel Co.,* 77 App. Div. 643, affirmed.

(Argued October 27, 1903; decided November 10, 1903.)

APPEAL from a judgment entered August 25, 1903, upon orders of the Appellate Division of the Supreme Court in the first judicial department which affirmed an interlocutory judgment of Special Term overruling a demurrer to the answer of the defendants other than the Pennsylvania Steel Company, reversed an interlocutory judgment of Special Term overruling a demurrer to the complaint by the defendant Pennsylvania Steel Company, and directed that the complaint be dismissed as to all of the defendants.

The nature of the action and the facts, so far as material, are stated in the opinion.

*L. Laflin Kellogg* and *Alfred C. Petté* for appellant. The facts alleged in the complaint constitute a good and sufficient cause of action under the Taxpayers' Statute. (*Bush* v. *O'Brien,* 164 N. Y. 205; *People ex rel.* v. *Featherstonhaugh,* 172 N. Y. 126; *Davenport* v. *Walker,* 57 App. Div. 221; *Meyers* v. *City of New York,* 58 App. Div. 534; *Adams* v. *Brennan,* 117 Ill. 199; *Meyers* v. *P. S. Co.,* 77 App. Div. 307; *Poindexter* v. *Greenhow,* 114 U. S. 270; *Norton* v. *Shelby County,* 118 U. S. 425; Mechem on Pub. Off. § 662; Cooley on Const. Lim. [6th ed.] 222; *People ex rel.* v. *Nixon,* 158 N. Y. 221; *People ex rel.* v. *Gleason,* 121 N. Y. 631; *Davenport* v. *Walker,* 57 App. Div. 221.)

*William C. Trull* and *Delos McCurdy* for the Pennsylvania Steel Company, respondent. The complaint does not state

facts sufficient to constitute a cause of action. (*People ex rel.* v. *Coler*, 56 App. Div. 98; 166 N. Y. 1; *People ex rel.* v. *Coler*, 166 N. Y. 144; *Calhoun* v. *Millard*, 121 N. Y. 69; *Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Ziegler* v. *Chapin*, 126 N. Y. 242; *Robinson* v. *Gilroy*, 30 N. Y. Supp. 411, 413; *N. Y. C. & H. R. R. R. Co.* v. *Maine*, 24 N. Y. Supp. 963; *Paul* v. *City of New York*, 46 App. Div. 69.) The contracts in question having been entered into in good faith and partially performed, the city and the commissioners are bound by the contracts, and, having received benefits therefrom, are estopped from questioning their validity. (*Bissell* v. *M. S. R. R. Co.*, 22 N. Y. 265; *W. A. Co.* v. *Barlow*, 63 N. Y. 62; *Mayor* v. *Sonneborn*, 113 N. Y. 423; *City of Buffalo* v. *Balcom*, 134 N. Y. 532, 536; *B. G. L. Co.* v. *Claffy*, 151 N. Y. 24; *Bush* v. *O'Brien*, 164 N. Y. 221, 222; *Alexander* v. *Donohue*, 143 N. Y. 203; *People ex rel.* v. *Coler*, 166 N. Y. 1.) The objection that the contracts are illegal because of the insertion therein of the provisions of the Labor Law is not available to the plaintiff. (L. 1895, ch. 789; L. 1896, ch. 612; *People* v. *B. F., etc., Ry. Co.*, 89 N. Y. 75.) Broad as are the provisions of the Taxpayers' Act, and liberally as it should be construed, it was never intended to confer upon the taxpayer the right or authority to exercise the discretion which is vested in the bridge commissioners or the municipality of the city of New York, to determine whether or not it is for the interest of the public to insist upon the invalidity of a particular covenant in a contract. (*People ex rel.* v. *Coler*, 56 App. Div. 98.)

*George L. Rives, Corporation Counsel* (*James McKeen* of counsel), for the City of New York et al., respondents. The complaint does not state facts sufficient to constitute a cause of action. (*B. G. L. Co.* v. *Claffy*, 151 N. Y. 24; *Bush* v. *O'Brien*, 164 N. Y. 215; *Calhoun* v. *Millard*, 121 N. Y. 169.) The plaintiff's demurrer to the answer interposed by these defendants was properly overruled. (*Hull* v. *Ely*, 2 Abb. [N. C.] 440; *Kimball* v. *Hewitt*, 15 Daly, 124; *Coombs*

v. *Pitt*, 3 Burr. 1423; *Commonwealth* v. *Churchill*, 5 Mass. 174; *Waters* v. *Jones*, 13 Wall. 680; *Tippecanoe Co.* v. *L. R. R. Co.*, 50 Ind. 118.)

CULLEN, J. As to the practice in this case it is sufficient to say that the judgment under review proceeded on the ground that the complaint did not state a good cause of action and the only question presented to us is the sufficiency of that complaint. The action is brought by a taxpayer of the city of New York against the city, the commissioners of the East River Bridge and the Pennsylvania Steel Company to declare void a contract entered into between the said commissioners and the company for the construction of the approaches to the bridge; to enjoin the continued performance of said contract and the further payment of any moneys on account thereof and to recover the moneys thitherto paid thereon. The complaint sets forth the act of the legislature authorizing the construction of the bridge (Chap. 789, Laws 1895); the appointment of certain of the defendants as commissioners under the provisions of the act; the advertisement by said commissioners for sealed proposals or bids for the construction of the steel and masonry approaches to the suspended structure of the bridge; the specifications of the work to be done and the material to be furnished; the terms and conditions of the contract into which the successful bidder would be required to enter; the receipt of several proposals from various bidders and the amounts of their respective bids; the award of the contract to the defendant, the Pennsylvania Steel Company, and the execution of the contract in pursuance of such award, and the entry of such company upon the performance of said contract. The legality of the contract is assailed on several grounds stated in the complaint. *First*, it is alleged there were discrepancies in the notices furnished to the contractors. In some of the notices it was stated that a certified check for six thousand dollars must accompany the proposals and that the successful bidder would be required to execute a bond in the penalty of two hundred thousand dollars for the perform-

28

ance of the contract. In others the amount of the certified check was given as twelve thousand dollars and that of the bond as four hundred thousand dollars. *Second.* The notice contained the following provision : " As by far the greater part of this work can be executed only by bridge establishments of the first class, bids will be received only from such parties as have the requisite plant and facilities which have been in successful operation on work of similar character for at least one year. The bidders must be, in the opinion of the commissioners, fully qualified, both by experience and in appliances, to execute work of this character and importance according to the highest standard of such work at the present time." *Third.* The specifications prescribed that the finished steel to be furnished under the contract should not contain to exceed .06 of one per cent of phosphorus, .04 of one per cent of sulphur, .80 of one per cent of manganese and .35 of one per cent of silicon. *Fourth.* That the specifications and contract required the contractor to comply with the provisions of the Labor Law (Chap. 415, Laws 1897) requiring the contractor to pay the prevailing rate of wages, to employ his laborers only eight hours a day, and to use only stone cut within the state of New York. The only allegation of fraud in the complaint is the following : " *Fourteenth* — Upon information and belief, that the said contracts and specifications and the said advertisement for bids and proposals for the doing of said work were fraudulently prepared and issued, and the said requirements of said advertisements that bids would be received only from parties having the requisite plant and facilities which had been in successful operation on work of similar character for at least one year, and of the specification providing that the finished steel should not contain to exceed .06 of one per cent of phosphorus, .04 of one per cent of sulphur, .80 of one per cent of manganese, and .35 of one per cent of silicon were unreasonable and unfair, and were fraudulently prepared and issued with the purpose and intent of limiting competition and confining the same to a small class of bidders, and did limit competition

and confine the same to a small class of bidders, thereby increasing the cost of the work as by said requirements, although competent and reliable bidders with the requisite plant and facilities desired to submit bids and proposals for the doing of said work, they were prevented from so doing unless their plant and facilities had been in successful operation on work of a similar character for at least one year; that the requirement in the specification as to the elements of finished steel tended to, and actually did increase the price of the work, because it prohibited the furnishing of steel by any other company than the Carbon Steel Company, whose steel alone meets the requirements and conditions of said specifications, although steel manufactured by other companies than said Carbon Steel Company is equally good and well adapted for the purposes of said proposed work." It is also charged by the complaint that the provisions concerning the Labor Law increased the cost of the work.

The commissioners for building the bridge did not derive their powers, duties and authority from the charter but from the special act of the legislature which provided for the construction of the bridge. At the time of the commencement of the work New York and Brooklyn were separate municipalities. The Greater New York charter of 1897 which consolidated the two cities did not in any way repeal or modify the act of 1895 directing the construction of the bridge. The prosecution of the work still continued under the commissioners appointed for the purpose until by the revised charter of 1901 (§ 595, subd. 5) the board of commissioners was abolished and its powers and duties devolved upon the commissioner of bridges of the city of New York. It was properly held by both the courts below that the power of the commissioners in the construction of the bridge was, under the statute, plenary and not limited or qualified by charter provisions concerning the letting of contracts. This was necessarily so for several reasons. At the time the work was commenced the commissioners were not agents of a single municipality but of two cities whose charter provisions might conflict. Even

after consolidation the provisions of the New York charter relating to the letting of contracts were such as could not be made applicable without subjecting the conduct of the trustees to review and control by other city authorities, while the intent of the statute was to vest power and discretion in the construction work exclusively in the trustees. This was rendered necessary by the exceptional character of the work. Its magnitude was such as to prevent the work being let in a single contract, and the unforeseen difficulties which might be encountered would equally preclude such a course. While some parts of the work and much material might be the subject of separate contracts, still it might be necessary to do other parts by day's work. Speed in the construction of the bridge was of the greatest importance, not only because of the pressing public need for its use, but in view of the enormous interest account continually increasing as the work progressed. These considerations were appreciated by this court in the case of *People ex rel. Murphy* v. *Kelly* (76 N. Y. 475), a litigation which arose with reference to the New York and Brooklyn bridge. Though the successful construction of the first bridge doubtless solved many doubtful problems, the considerations referred to by the court in the *Kelly* case bear with almost equal force on the case now before us.

With this brief statement of the powers of the commissioners we may now review the charges against them found in the complaint. There is no allegation that the discrepancy in the notices issued to contractors in any way affected the bidding, nor is it alleged that it was other than a blunder and not the result of design; nor is there any allegation that the award of the contract to the steel company was made in bad faith. It is, however, charged that the commissioners fraudulently prescribed in their notices and specifications that proposals would be received from those bidders only who possessed plants requisite to the work and whose plants had been in successful operation for at least one year, and that there would be excluded steel containing more than a specified percentage of foreign elements, " with the purpose and intent of limiting

competition and confining the same to a small class of bid-
ders ; " and it is also charged that the cost of the work was
increased thereby.    While it is alleged that this action was had
fraudulently there is no allegation of fact to support the charge,
except the statement that it was made with the purpose and
intent of limiting the class of bidders.    " The mere general
allegations of fraud or conspiracy are of no value as stating a
cause of action."   ( *Wood* v. *Amory*, 105 N. Y. 278 ; *Van*
*Weel* v. *Winston*, 115 U. S. 228 ; *Cohn* v. *Goldman*, 76 N. Y.
284 ; *Knapp* v. *City of Brooklyn*, 97 id. 520.)   The plaintiff
must state what the facts or intent were so that the court may
see whether they were fraudulent or not, and his characteriza-
tion of them as such is not sufficient.    That the commissioners
intended by the specifications to limit the class of bidders is
unquestionable, and that they intended to limit the character
of material to be furnished under the contract is equally
unquestionable ; but the imposition of such limitations so far
from being fraudulent may have been dictated and presumably
were dictated solely by regard for the advantage and interest
of the municipality.    As already said, the commissioners were
not obliged to do the work or obtain the materials by contract,
and if they did see fit to contract they were not bound to
award the contract by competition.    It was their duty to
see that the material of which the structure was built was of
such character as to secure safety and permanence, and this
even though at an enhanced cost.    It may be true, as stated
in the complaint, that other steel just as good as that called
for by the specifications could be secured at a less price, but
the question of the kind of steel to be adopted was a question
to be determined by the commissioners, not by the courts.
So also the requirement that bidders should have a plant
which had been in successful operation for at least a year
might have been dictated by the wisest economy.    Every one
knows that delays are sure to occur in great public improve-
ments. · This very bridge, as well as its predecessor, is a par-
ticular example of that truth.    The first bridge should have
been finished long before it was and the present bridge

should have been finished long before now. A law suit against the sureties of a defaulting or incompetent contractor would be an insufficient compensation to the traveling public for the inconvenience, or to the municipality for its interest account running on at the rate of hundreds of thousands of dollars a year. Therefore, as the commissioners were not limited by the statute to performance of the work by contract or by competition, their intent to limit the competition both in class of contractors and in character of material was in itself neither illegal nor fraudulent. If it had been charged that the commissioners, knowing and believing that the restrictions and limitations imposed would not be conducive to the successful prosecution of the work and would be disadvantageous to the city of New York, had corruptly, with intent to benefit the steel company or some other favorite contractor, imposed these limitations, a different question would be presented. It is to be observed, however, that the plaintiff has carefully abstained from any charge of that character. These views also dispose of the objection to the commissioners' action in that they failed to award the contract to the lowest bidder.

We are now brought to the effect of the incorporation of the provisions of the Labor Law into the contract between the commissioners and the steel company. The contract was made before this court had rendered its decision in the case of *People ex rel. Rodgers* v. *Coler* (166 N. Y. 1), declaring the provisions of that statute unconstitutional. Before that decision both branches of the Supreme Court had upheld the validity of the law. (*Meyers* v. *City of New York*, 32 Misc. Rep. 522; affirmed on opinion below, 54 App. Div. 631.) It is doubtless true, as claimed by counsel for the respondent, that an unconstitutional statute is void and of no effect at the time of its enactment, not merely from the subsequent adjudication to that effect by the courts. It is also true that every one is presumed to know the law. But every one of sense knows that this presumption is not in strict accordance with the fact; that no one can know all the law, and that some apparently know almost no law. The presumption, however, obtains because it is necessary that it should

obtain for government to exist, otherwise the greatest ignorance would confer the greatest license. But while mistakes in the law will not relieve one from liability for his act, in cases where intent or good faith is the issue, the party's knowledge of the law may be material. (*United States* v. *Realty Co.*, 163 U. S. 427.) It is not pretended that in inserting these conditions in the contract the commissioners acted in bad faith on in the belief that the law was invalid. In the state of the judicial decisions at the time prudence would seem to have dictated that the commissioners should comply with the statute. Therefore, though it may be that the commissioners' action in this respect was illegal, corrupt it was not, nor is it charged to have been. In the *Rodgers* case, in which the provisions of the Labor Law, so far as they related to the action of municipalities, were declared unconstitutional, it was held, not that a contract imposing these conditions on the contractor was void, but that the contractor could violate them, and, notwithstanding such violation, recover his pay, not on a *quantum meruit*, the value of the work done, but the contract price. That decision controls the present case. The learned counsel for the appellant seeks to distinguish the cases in two respects. He contends, first, that in the *Rodgers* case there was no proof that the Labor Law provisions of the contract enhanced the cost of the work, while in the present one that fact is expressly charged in the complaint. The distinction is not well founded. The ground on which the decision in the *Rodgers* case proceeded was that the provisions of the Labor Law necessarily increased the cost of the work to the municipality and that the legislature was without power to impose upon the municipality and its taxpayers such a burden. The second distinction sought to be drawn is that in the *Rodgers* case the contract had been completed while here it has not. It is, however, charged in the complaint that the contractor had entered on the performance of the work and received payments on account of it from the city, which the plaintiff seeks to have returned. So far as the payments had been actually made the *Rodgers* case unquestionably governs

and the contractor cannot be required to restore them. But the principle of the *Rodgers* case seems equally applicable to the further execution of the contract. The contract is an entire one. The contractor, naturally, in the ordinary course of business has incurred expense in contemplation of performance of the whole contract. Payment only for the work done and materials furnished would not compensate it for the expenditures made or the obligations assumed. The difference in fact on which the counsel lays stress justifies no distinction in principle. We reiterate the language of Judge HAIGHT in *People ex rel. North* v. *Featherstonhaugh* (172 N. Y. 112): "But the contract in this case does not depend upon the Labor Law for its consideration. The provisions of that statute incorporated into the specifications are extraneous matters which have no material effect upon the main provisions of the contract, and cannot affect those provisions unless it may tend to increase the cost of the work. The contractors must be presumed to have known the law, and, consequently, to have known that the provision with reference to the rate of wages was unconstitutional. They are deemed, therefore, to have made their bid with this understanding, even independent of the notice which was given to them by the commissioners."

Though we rest our disposition of this branch of the case on the decision of *People ex rel. Rodgers* v. *Coler*, there is another ground on which the action of the courts below should be upheld. As already said, though the action of the commissioners in inserting in the contract the conditions of the Labor Law may have been illegal, it was not fraudulent or corrupt. If these provisions avoided the contract, still as the commissioners might immediately after the decision of this court declaring their illegality have without competition or advertisement entered into a new contract with the steel company upon the same terms and conditions, except those required by the Labor Law (a course which is by no means certain it would not have been prudent to take rather than to interrupt and delay the prosecution of the work), it is clear

that they could have waived the illegal conditions.    Hence it is not within the power of the taxpayer to cancel or annul a contract which the commissioners determined to continue in force.

The judgment appealed from should be affirmed, with costs.

Parker, Ch. J., Gray, Haight, Martin, Vann and Werner, JJ., concur.

Judgment affirmed.