the proviso is not against the actual laying of pipes in streets, but the granting of the right to do so. It also follows, if the plaintiff's position is correct, that the plaintiff would have the right to set up its derricks and drill for oil or gas right in the public street. We mention these things for the purpose of showing to what absurd results the plaintiff's position would lead, and to demonstrate, so far as may be, that the parties, when they executed the release in question, could not have intended to provide against the situation presented, so as to preclude the defendant, a public service corporation, from laying pipes and mains under its existing franchise for the benefit of persons occupying houses on the newly opened streets.

These considerations lead us to the conclusion that the motion for judgment must be denied, and the injunction vacated. So ordered, with $10 costs to the defendant.

---

OCCIDENTAL CONST. CO. v. MILLER et al.

(Supreme Court, Appellate Division, First Department. January 3, 1913.)

CORPORATIONS (§ 319*)—ACTION AGAINST OFFICERS—SUFFICIENCY OF COMPLAINT.

> A complaint in a corporation's action against its president and the chairman of its executive committee alleged that the corporation had negotiated with a foreign government for the building of a railroad for which it was to receive a large subsidy; that a deposit of $100,000 was required from plaintiff; that, knowing that another company was trying to obtain a similar concession, defendants negligently and fraudulently and in violation of their duties, and in furtherance of a conspiracy to defraud the corporation, and to deprive it of valuable property, by resolutions in directors' meetings, prevented the corporation from obtaining such subsidy, but did not allege plaintiff's financial status, or whether it was able to accept the concession and construct the railroad, or whether the enterprise would have been profitable. *Held*, that the allegations as to defendants' fraud were not allegations of fact tending to show a violation of their duties, and a liability to account to the corporation for breach of duty as directors.
>
> [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1415, 1416–1425; Dec. Dig. § 319.*]

Appeal from Special Term, New York County.

Action by the Occidental Construction Company against Charles Miller, impleaded with Leonor F. Loree. From an order denying his motion for judgment on the pleadings, defendant Miller appeals. Order reversed and motion granted.

See, also, 137 N. Y. Supp. 1131.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Walter B. Raymond, of New York City (Samuel S. Watson, of New York City, and Ernest G. Metcalfe, of Brooklyn, on the brief), for appellant.

Lewis H. Freedman, of New York City (Leland B. Garretson, of New York City, on the brief), for respondent.

LAUGHLIN, J. The plaintiff is a corporation organized under the laws of New Jersey, and it brings this action to recover damages alleged to have been sustained by it through the negligent and fraudulent acts of the defendants as directors and officers of the corporation by which plaintiff was deprived of obtaining from the government of Mexico a concession for building a railroad along the west coast of Mexico for which it would have obtained a subsidy of $12,-000,000 in Mexican money, equivalent to $6,000,000 in American money, and in consequence thereof it lost all disbursements in connection therewith aggregating $100,000. Judgment is demanded for these two items amounting to $6,100,000, together with interest.

It is alleged that the defendants were incorporators of the plaintiff, and were elected directors, and that thereupon the appellant was elected president of the company and became ex officio a member of the executive committee, consisting of five, of which the defendant Loree was chairman; that the executive committee was authorized to exercise the powers of the board of directors when the board was not in session; that the company was organized to build a railroad between certain designated points in Mexico of an aggregate length of about 1,100 miles and to acquire mining claims, lumber lands, and water power in the vicinity of its line of railroad, and to exploit the same by subsidiary companies to be formed for that purpose; that the company duly authorized one Warfield, who was the vice president, to apply to the Mexican government for concessions for these purposes; that Warfield went to Mexico and obtained a concession from the Mexican government for the construction of a railroad by the plaintiff for which the Mexican government agreed to grant a subsidy of $12,000,000, Mexican currency; that about 2½ years thereafter, at a meeting of the board of the executive committee of the plaintiff, a resolution was adopted approving the action of the vice president in "reopening negotiations with the Mexican government for the concession to build the proposed railroad to extend from Guadalajara to Guaymas," and he was directed "to conclude the negotiations, if possible, upon the basis that the amount of the subsidy for the road shall be sufficient to pay the interest on the bonds necessary to construct it for a period of ten years after sections are completed," and at the same meeting a resolution was adopted abandoning the plaintiff's proposed railroad in part; that pursuant to this last resolution Warfield concluded negotiations with the Mexican government for a change in the railroad proposed to be built by the plaintiff and for the payment by the Mexican government of a subsidy of $12,000,-000, which at that time was equivalent to $6,000,000 American money, for the building of the railroad as changed, and reported this to the defendants; that the law of Mexico required that the applicant for a concession to construct a railroad should, after the concession was granted and accepted, make a deposit in the general treasury, and that the amount so required to be deposited by the plaintiff on account of said concession was $100,000, and that this was known to the plaintiff and to the defendants; that the plaintiff and the defendants knew that the Southern Pacific Railroad Company was desirous of obtain-

ing a similar concession from the Mexican government, and that one Eaugle was representing it, and, in effect, that it was necessary for the plaintiff to make said deposit of $100,000 in order to prevent the granting of the concession or of a similar concession to the Southern Pacific Company; that at a meeting of the board of directors of the plaintiff on the 21st day of June, 1905, the defendant Loree introduced a resolution to advise the Mexican government that the plaintiff deemed it inadvisable to engage in the construction of the railroad, unless, as originally proposed by the plaintiff, a concession be granted by the Mexican government giving the plaintiff two years within which to make surveys and investigations over the entire route before accepting the same, on condition that the data thus acquired become the property of the Mexican government, and that Warfield moved as an amendment that the company put up and risk the deposit on the concession if the government of Mexico required it, and that the amendment was rejected and the original resolution was adopted; that the plaintiff then had "or could have obtained the money required to make the deposit required by the laws of Mexico and the terms of the concession, and was able to perform and comply with all the terms and conditions of said concession." It is further alleged on information and belief that the defendants "controlled the directors," other than Warfield, who were present at said meeting of the board of directors, and induced the directors to vote in favor of the resolution offered by the defendant Loree; that the defendants and each of them knew that the adoption of said resolution would prevent the plaintiff from obtaining the concession and deprive it of said subsidy, and that thereafter the Mexican government was advised of the action thus taken, and that thereupon it entered into negotiations with the representative of the Southern Pacific Company, and granted a similar concession to that road, except that the amount of the subsidy was $15,000,000, Mexican money. It is then further alleged upon information and belief "that the defendants and each of them negligently and fraudulently, and in violation of their duties and the duty of each of them as a director and officer of the plaintiff, and in furtherance of a conspiracy to defraud the plaintiff and to deprive it of valuable property and valuable property rights, did and committed each and every of the acts" set forth in the complaint as resulting in the damages for which a recovery is sought, and that said negligent and fraudulent acts on the part of the defendants were done and committed "for the purpose and with the intention of depriving the plaintiff of valuable property and of valuable property rights," and that by reason thereof the plaintiff was prevented from obtaining the concession and the subsidy, and the expenses incurred by it in the premises were wholly lost.

It is quite plain that no cause of action against appellant is alleged in the complaint. It contains no allegation tending to show the financial status of the plaintiff at the time, whether it was able to accept the concession and construct the railroad, or whether the enterprise would have been profitable or otherwise advantageous to the plaintiff. The only allegations upon which it can even be claimed that the abandonment of the enterprise was unwise are those with respect to the sub-

sidy to be obtained from the Mexican government. It is not to be inferred, however, that the plaintiff was to obtain a subsidy of $6,-000,000 on depositing $100,000 without further responsibility. It is manifest that, by accepting the concession, it would be required to construct and operate the railroad as a condition of obtaining the subsidy. The allegations that the action of the appellant in voting for the resolution to abandon the enterprise was negligent and fraudulent, and in furtherance of a conspiracy to deprive the plaintiff of the subsidy, are not allegations of facts tending to show a violation by the appellant of his duty to the plaintiff as a director and member of the executive committee, and are wholly inadequate upon which to predicate a liability on the part of the appellant to account to the corporation for a breach of his duty as a director. People v. Equitable Life Assurance Society, 124 App. Div. 714, 732, 109 N. Y. Supp. 453; Wood v. Amory, 105 N. Y. 278, 11 N. E. 636; Pagnillo v. Mack Paving & Construction Co., 142 App. Div. 491, 127 N. Y. Supp. 72; Knowles v. City of New York, 176 N. Y. 430, 68 N. E. 860.

It follows that the order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur.