HENNESSY v. MUHLEMAN et al.

(Supreme Court, Appellate Division, Second Department. May 2, 1899.)

CORPORATIONS—POWERS OF DIRECTORS—LEASE.

Directors of a corporation organized to acquire and hold mineral land and other real property, and to mine, transport, and dispose of the mineral and other products thereof, have power, without the unanimous consent of the stockholders, to lease the entire property of the corporation for a term of years in consideration of a fixed rental and a certain portion of the metals mined on the lands; the lease providing that at the end of the term all machinery and equipments used in developing the property shall become the property of the corporation, and authorizing a forfeiture and re-entry on the lessee's failure to perform the covenants thereof.

Appeal from special term.

Action by Charles O'Connor Hennessy against Maurice L. Muhleman and others to restrain the execution of a certain lease by defendants. From an order of the special term continuing an injunction pendente lite (57 N. Y. Supp. 114), defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Augustus Van Wyck and Eustace Conway, for appellants.
Edward M. Grout (Charles H. Hyde, on the brief), for respondent.

WOODWARD, J. The question presented upon this appeal is whether, as a matter of law, the board of directors of the defendant Pande Basin Gold Placer Company had the authority and power under its charter to make the lease which is involved in the present controversy. The learned justice at special term continued the injunction pending the litigation upon the sole ground that the company had no such power or authority without the consent of each and every stockholder, and, as the issue of law is thus raised, the defendant company appeals to this court. The facts necessary to be considered in reaching a conclusion upon this question are not controverted. The plaintiff is a stockholder in the defendant the

Pande Basin Gold Placer Company. This company was organized, under the laws of West Virginia, for "the purpose of acquiring and holding by purchase, lease or otherwise, mineral land and other real property on Baranoff Island, Alaska, and elsewhere in the United States and territories." In April, 1898, Maurice L. Muhleman, who had gained control of the property which it is now proposed to lease, entered into a negotiation with the company by which, in consideration of the issue to him of 2,499,900 shares of stock of the company, at the making of a certain agreement with the original owners of the property, he undertook to furnish capital for the development of the mines, and to give a deed of the said property to the company. This proposition was accepted. Mr. Muhleman raised some money, and made certain tests of the ore, etc., of the property. Subsequently, and in January, 1899, the plaintiff in this action learned that the directors of the company were about to make a lease of the property to one Henry L. Sprague, whereupon he served a notice upon the directors, warning them that the proposed lease was illegal and improper. Later this action was commenced, the court granting an injunction restraining the directors from making the said lease, with an order to show cause why the same should not be continued. It subsequently developed that a lease had been made to one Voorhees, who had assigned the same to the Sitka Developing Company, whereupon the plaintiff procured an order discontinuing the action against Sprague, and an order was afterwards made bringing in the said Voorhees and the Sitka Developing Company, and allowing plaintiff to amend to comply with the order. The motion to continue the injunction was heard upon the affidavits, and the learned justice at special term held as above stated, continuing the injunction.

We are unable to concur in the conclusion reached at special term on the question of law presented. In actions by stockholders which assail the acts of their directors or trustees, courts will not interfere, unless the powers have been illegally or unconstitutionally executed, or unless it be made to appear that the acts were fraudulent or collusive and destructive of the rights of the stockholders. Mere errors of judgment are not sufficient as grounds for equity courts to interfere, for the powers of directors of corporations are largely discretionary. Leslie v. Lorillard, 110 N. Y. 519, 18 N. E. 363. The learned justice at special term is not convinced that there has been any fraud or collusion, or that the lease has been executed in derogation of the rights and interests of the stockholders, but continues the injunction because, as he concludes, the directors were without power in the premises. Reliance is placed upon the case of People v. Ballard, 134 N. Y. 269, 32 N. E. 54, as an authority in support of this conclusion; but it does not, in our opinion, cover the case under consideration. In that case a corporation organized under the laws of the state of New York transferred all its property, both real and personal, including certain mines, to a corporation organized under the laws of the state of California, for the purpose of carrying on the business theretofore conducted by the defendant company and of taking title to its assets. This action was taken

with the approval of the owners of a majority of the stock, but without the approval of the holders of a minority of such stock. The court held that, while those who had consented to the transfer were estopped from contesting the validity of the action, those who had not consented were not bound by the action of the trustees; but this can hardly be held to be a parallel case with the one at bar, where the directors of the company have merely entered into a lease of the property for a period of five years. In the Ballard Case the corporation, by the action of its trustees, passed absolutely out of existence. "By the transaction complained of," say the court, "the defendant company was stripped of all its property, and thus prevented from going on in business and deprived of all means of carrying into effect the object of its existence. * * * It cannot sell all its property to a foreign corporation organized through its procurement, with a majority of nonresident trustees, for the express purpose of stepping into its shoes, taking all its assets, and carrying on its business. That would be the practical destruction of the corporation by its own act, which the law will not tolerate."

In the case now under consideration, the corporation was organized, not for the exclusive purpose of mining, as seems to have been assumed by the learned justice, but, as its charter declares, for the purpose of "acquiring and holding, by purchase, lease, or otherwise, mineral land and other real property, * * * and to mine, transport, and dispose of the mineral and other products of such lands." The company has acquired, and is now holding, by purchase, mineral land and other real property; and, while its charter permits it to conduct mining and other enterprises, there is nothing in the charter which makes it necessary that the company itself should do the mining, or that it should be done under its direction. It may fairly, within the implied powers, rent or lease this property for the purpose of developing its mines. It has not disposed of its property, nor has it suspended the active life of the corporation. The contract or lease stipulates for a fixed rental, and provides for the developing of the mining property, reserving to the corporation a certain portion of the metals or the avails of such metals, and provides that at the end of the term all machinery, equipments, etc., shall become the property of the corporation. It is also provided that a failure on the part of the lessee to keep any of the covenants of the agreement shall operate to terminate the lease, and that the corporation may re-enter and possess itself of the property. It is necessary for the corporation to remain in existence. It has certain active duties to perform, during the term of the contract, in determining the amounts which shall fall due from time to time; and it at all times holds the title to the property, which is one of the chief purposes of its creation. If in the judgment of the board of directors, acting in good faith, the leasing of this property to a company for a term of years is more desirable than to operate the same directly, we see no reason why they should not be permitted to do so. It seems to us an entirely legitimate use of property belonging to the corporation, the control of which is vested by law

in the board of directors. That it may not be the best way of doing business may be asserted or even conceded, but that does not change the legal aspects of the case. Every man who invests in the stock of a corporation accepts the risks of honest errors of judgment on the part of those who are chosen to conduct the affairs of the corporation; and it seems entirely clear that there is no ground for the conclusion that the corporation has exceeded its implied powers in making the lease complained of by the plaintiff. In other words, this corporation was organized for the purpose of purchasing certain mineral lands, which it was hoped would yield a profit to its owners through the development of the mines. The company was given all the powers necessary in the handling of its property to make them profitable, and it was a matter purely within the discretionary powers of the board of directors whether these mines should be operated by the company, or by some person or corporation under a lease or contract. There is no doubt that the corporation might make a contract with the Sitka Developing Company to work these mines, paying them a percentage of the product; and the case is not materially different because the contract takes the form of a lease of the property for the purpose of carrying out one of the objects of the corporation, in the benefits of which, in so far as appears upon the record, the stockholders share equally. The doctrine of ultra vires originated at a time when nearly all corporations were created for public purposes, and there is no reason why it should ever have been applied to private corporations any more than to the powers of individuals in a partnership. Holm v. Brewing Co., 21 App. Div. 204, 47 N. Y. Supp. 518. There would be no good reason why this lease might not be made by an individual in a partnership. There is no consideration of public policy to forbid such a contract; and, in the absence of fraud, collusion, or other misconduct on the part of the board of directors going to the merits of the question, we are unable to see that the plaintiff has suffered any injury which justifies the continuance of the order of injunction, or that the board of directors have exceeded the discretionary power vested in them by the laws of West Virginia.

The order appealed from should be reversed, and the injunction dissolved.

Order reversed, with $10 costs and disbursements, and injunction dissolved, with $10 costs. All concur.