William Randolph Hearst, Respondent, v. George B. McClellan, as Mayor of The City of New York, and Edward M. Grout, as Comptroller of The City of New York, Appellants, Impleaded with Patrick Keenan, as City Chamberlain of The City of New York, Defendant.

*Taxpayer's action — proof of fraud, etc., essential to its maintenance — section 59 of the New York charter does not authorize such an action without proof of fraud or bad faith — the statute was not intended to protect against bad judgment — nor against acts within an officer's jurisdiction — "waste" and "injury" defined — what statement as to proposed illegal audits constitutes merely a conclusion — evidential facts must be alleged — averments as to the price paid for gas in other places — what constitutes bad faith.*

The taxpayer's action authorized by section 1925 of the Code of Civil Procedure and chapter 301 of the Laws of 1892 cannot be maintained without proof of fraud, collusion, corruption, bad faith or illegality.

Section 59 of the Greater New York charter (Laws of 1901, chap. 466), which provides, "The board of aldermen and the several members thereof and all officers and employes of the city are hereby declared trustees of the property, funds and effects of said city respectively, so far as such property, funds and effects are or may be committed to their management or control, and every person residing in said city, when authorized to pay taxes therein, and who shall pay taxes therein, is hereby declared to be a *cestui que trust* in respect to the said property, funds and effects, respectively ; and any co-trustees, or any *cestui que trust*, shall be entitled, as against said trustees, and in regard to said property, funds and effects, to all the rights and privileges provided by law for any co-trustee or *cestui que trust* to prosecute and maintain any action to prevent waste and injury to any property, funds and estate held in trust. Such trustees are hereby made subject to all the duties and responsibilities imposed by law on trustees, and such duties and responsibilities may be enforced by the city or by any co-trustee or *cestui que trust* aforesaid," does not authorize the maintenance of a taxpayer's action without proof of fraud or bad faith.

The terms "waste" and "injury" as used in section 1925 of the Code of Civil Procedure and section 59 of the Greater New York charter are identical in meaning and include only illegal, wrongful or dishonest acts.

An allegation contained in a complaint in an action brought by a resident taxpayer of the city of New York against the mayor, comptroller and chamberlain of that city to restrain them from auditing and paying certain bills for gas and electric light furnished to the city in excess of sixty and eighty per cent of the face of such bills respectively, which avers that the defendants, "in violation of law, in disregard of their duties to the public, and in bad faith, have agreed with one another and with the aforesaid companies to pay to said companies the entire amount of the bills rendered. * * * That the payment of the

said bills would be a waste of more than $1,200,000 of the public funds of the city of New York, would be a fraud upon the public and illegal," is an allegation of a conclusion and not of an issuable fact.

Where a fact is averred in a complaint as a deduction from evidential facts alleged, such evidential facts must warrant the deduction.

Averments that the average price paid for gas and electric lighting in the principal cities in the United States and Great Britain is a certain percentage lower than the average price paid for gas and electric lighting in the city of New York, will not, in the absence of proof of the existence of similar conditions in the cities compared, warrant the inference that the average price paid in the city of New York for gas and electric lighting exceeds the fair value thereof by the percentage specified.

To constitute bad faith on the part of a municipal officer in performing an official act, justifying the maintenance of a taxpayer's action to restrain such act, some improper motive is essential. The act need not be corrupt in the sense of being induced by desire for pecuniary gain, but it must be done to accomplish some purpose foreign to the interest of the municipality which is tantamount to fraud; bad judgment, even gross incompetency, is not bad faith.

The taxpayers' acts were not designed to protect the public from mistakes, errors of judgment or lack of intelligent appreciation of official duties on the part of their chosen officials.

So long as an auditing officer keeps within his jurisdiction, and acts with good faith, his audit is not the subject of collateral attack no matter what errors of judgment he may commit.

A taxpayer residing in the city of New York may not maintain a taxpayer's action to restrain the audit and payment by the city officials of bills rendered for gas and electric lighting furnished to the city, which bills were conceded to be excessive, although not to such an extent as would of itself indicate fraud, where bad faith on the part of the city officials is not alleged, and the only criticism of their action is that they were guilty of an error of judgment.

APPEAL by the defendants, George B. McClellan, as mayor of the city of New York, and another, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 19th day of December, 1904, continuing *pendente lite* a temporary injunction theretofore granted in the action.

*Theodore Connoly* [*John J. Delany* with him on the brief], for the appellant McClellan.

*William J. Carr*, for the appellant Grout.

*Clarence J. Shearn* [*Edward B. Whitney* with him on the brief], for the respondent.

MILLER, J. :

The defendants appeal from an order of the Special Term continuing a temporary injunction *pendente lite*, granted in a taxpayer's action brought by the plaintiff to restrain the audit and payment of certain bills for gas and electric lighting in excess of eighty and sixty per cent of the face thereof respectively. The order is challenged in this court upon the ground that the moving papers contain no statements of facts upon which fraud, bad faith or illegal, corrupt or dishonest conduct can be predicated, while the respondent insists, *first*, that the action can be maintained without such proof; *second*, that there is proof of bad faith; and, *third*, that the proposed payment is illegal, and, therefore, can be enjoined, irrespective of the motive of the officer proposing to make it.

The rule as established by *Talcott* v. *City of Buffalo* (125 N. Y. 280) and *Ziegler* v. *Chapin* (126 id. 342), that the action authorized by section 1925 of the Code of Civil Procedure and by chapter 301 of the Laws of 1892 cannot be maintained without proof of fraud, collusion, corruption or bad faith or illegality, has been uniformly followed by the courts of this State. But the respondent insists that section 59 of the Greater New York charter (Laws of 1901, chap. 466) is broader than the General Taxpayers' Act, and authorizes the action without proof of fraud or bad faith. That section is as follows: " The board of aldermen and the several members thereof and all officers and employes of the city are hereby declared trustees of the property, funds and effects of said city respectively, so far as such property, funds and effects are or may be committed to their management or control, and every person residing in said city, when authorized to pay taxes therein, and who shall pay taxes therein, is hereby declared to be a *cestui que trust* in respect to the said property, funds and effects, respectively; and any co-trustees, or any *cestui que trust*, shall be entitled, as against said trustees, and in regard to said property, funds and effects, to all the rights and privileges provided by law for any co-trustee or *cestui que trust* to prosecute and maintain any action to prevent waste and injury to any property, funds and estate held in trust. Such trustees are hereby made subject to all the duties and responsibilities imposed by law on trustees, and such duties and responsibilities may be

enforced by the city or by any co-trustee or *cestui que trust* aforesaid."

It is argued that this statute requires the courts to control the official acts of the administrative officers of the city of New York precisely to the same extent as the acts of any trustee may be controlled. The jurisdiction of courts of equity over trusts is inherent; a trustee in a proper case may ask the advice of the court; in the absence of a trustee the court will even take upon itself the execution of the trust, and yet a court of equity cannot interfere with the discretion of a trustee when exercised within fair and reasonable limits unless there is fraud, bad faith, or some peculiar reason calling for its intervention. (*Mason* v. *Jones*, 3 Edw. Ch. 497; *Ireland* v. *Ireland*, 84 N. Y. 321.) And it has been held that the courts will not interfere with the discretion of the directors of a private corporation at the instance of its stockholders unless the corporate powers have been illegally or unconscientiously executed, or unless it be made to appear that the acts complained of were fraudulent or collusive, and destructive of the rights of the stockholders; and that mere errors of judgment are not sufficient as grounds of equity interference. (*Leslie* v. *Lorillard*, 110 N. Y. 519; *Burden* v. *Burden*, 159 id. 287; *Hennessy* v. *Muhleman*, 40 App. Div. 175.) The history of the two statutes shows their purpose to have been the same. The special act applicable to New York city was first enacted by section 3 of chapter 405 of the Laws of 1864, the general act by chapter 161 of the Laws of 1872. Both were undoubtedly the result of the decision in *Roosevelt* v. *Draper* (23 N. Y. 318), which held that a taxpayer could not maintain an action to restrain or avoid a corporate act not affecting his private interest as distinct from that of other inhabitants. While the act of 1864 has been re-enacted by the Consolidation Act (Laws of 1882, chap. 410, § 101) and the present charter (*supra*), it is significant that no decision can be found even suggesting that greater powers were conferred by it than by the general act, and in the case of *Knowles* v. *City of New York* (176 N. Y. 430) the Court of Appeals, in affirming a judgment sustaining a demurrer in a taxpayer's action, placed its decision upon the ground that the complaint did not allege facts showing that the acts questioned were either illegal or fraudulent.

It is not to be assumed that the Legislature intended that the courts should become public administrators in the city of New York and not elsewhere. The reasons which were controlling in the construction of the general act apply with equal force to the special act, and compel the conclusion that the terms "waste" and "injury" as used in the two statutes are identical in meaning, and include only illegal, wrongful or dishonest acts.

The complaint alleges on information and belief that the defendants "in violation of law, in disregard of their duties to the public, and in bad faith, have agreed with one another and with the aforesaid companies to pay to said companies the entire amount of the bills rendered. * * * That the payment of the said bills would be a waste of more than $1,200,000 of the public funds of the city of New York, would be a fraud upon the public and illegal." These are allegations of conclusions and not issuable facts. (*Knowles* v. *City of New York, supra; Kittinger* v. *Buffalo Traction Co.,* 160 N. Y. 377; *Barhite* v. *Home Tel. Co.,* 50 App. Div. 25; *Wallace* v. *Jones,* 83 id. 152.) A brief recital of the facts is, therefore, necessary.

In December, 1902, the commissioner of water supply, gas and electricity advertised for and received bids for gas and electric lighting for the year 1903; said bids were neither accepted nor rejected, but were referred by him to the board of estimate and apportionment, of which the defendant Grout was a member; upon the report of a committee of which the defendant Grout was a member the board, in December, 1903, adopted a resolution in accordance with which all of said bids, except one, were rejected by the commissioner as unreasonably high; the companies submitting said bids were then furnishing, and during the year 1903 before the rejection of the bids and thereafter continued to furnish to the city gas and electric lighting and to render monthly bills therefor upon the basis of said bids, which the comptroller refused to audit, offering, however, to allow sixty and eighty per cent of the gas and electric light bills respectively, without prejudice to the contention of the city and the companies, which offer was accepted by a few, but rejected by most of the companies. Meanwhile the commissioner advertised for bids for the year 1904; the same companies submitted bids at practically the same rate, and in October, 1904, the com-

missioner accepted said bids.    Two taxpayer's actions were begun, one in Manhattan and one in Brooklyn, to restrain the making of a contract, one on the ground that the bids were excessive, and one on the ground that the bids accepted were not the lowest.    Motions in both actions for injunctions were denied, and thereafter the commissioner entered into a contract for a year from March, 1904.    The prices which the city had been paying prior to 1903, the prices bid for the year 1903, the prices charged in the disputed bills, and the prices specified in the contract of 1904, were practically the same, and these prices were on the average less than were charged private consumers, and, in respect to the gas companies, less than the rate fixed by statute as the maximum charge against the city, there being no statutory restriction as to electric lighting charges.    After the making of said contract the comptroller proposed to pay said companies the face of the bills if they would waive all claim to interest and make certain modifications in said contract theretofore entered into, and the order appealed from enjoins said proposed adjustment. It also appears that the different companies are subsidiary to a single company, each operating within restricted districts without competition.    It is alleged by the respondent that the average price paid for gas and electric lighting in the principal cities of the United States and Great Britain is less than that bid by these companies; that the bid price for gas lighting by the one company whose bid for 1903 was accepted was twenty per cent less than the average price bid by the other companies, which, however, was all it was authorized by its charter to charge, and that the average price for electric lighting in other cities is forty per cent less than the average price bid ; from which the conclusion is drawn that the excess of the bills rendered for electric lighting over the fair value amounts to more than forty per cent thereof, or $900,000, and the like excess in respect to gas lighting to twenty per cent thereof, or $300,000, but this is a *non sequitur*.    Where a fact is stated as a deduction from evidential facts alleged, the facts alleged must warrant the deduction.    Prices paid in other cities could hardly be controlling without proof that similar conditions existed.    But it is conceded that the prices charged are unreasonably high, and the question is presented whether the facts stated warrant an inference of bad faith on the part of the defendant Grout in proposing said

settlement. To constitute bad faith some improper motive is essential. The act need not be corrupt in the sense of being induced by desire for pecuniary gain, but it must be done to accomplish some purpose foreign to the interest of the municipality, which is tantamount to fraud. Bad judgment, even gross incompetence, is not bad faith. As pointed out in cases cited *supra*, the statute was not designed to protect the public from "mistakes, errors of judgment or the lack of intelligent appreciation of official duty" on the part of their chosen officials. (*Talcott* v. *City of Buffalo, supra,* 288.) Under our form of government a different remedy is intended, fraught with less mischief than the conversion of officers, designed by the Constitution to discharge judicial functions only, into public administrators.

Broad power to settle and adjust claims is conferred on the comptroller by section 149 of the charter, in the following language : "He shall settle and adjust all claims in favor of or against the corporation, and all accounts in which the corporation is concerned as debtor or creditor; but in adjusting and settling such claims he shall, as far as practicable, be governed by the rules of law and principles of equity which prevail in courts of justice."

The rule has never been questioned, so far as I am aware, that so long as an auditing officer keeps within his jurisdiction and acts in good faith, no matter what errors of judgment he may commit, his audit is not the subject of collateral attack, and no fact is alleged inconsistent with good faith on the part of the comptroller. It may be that he acted imprudently and unwisely ; it may be that he was mistaken in the assumption that the companies could recover interest, as counsel for the respondent learnedly argues ; he may have been wrong in thinking that the price charged private consumers established a market price ; he may have erred in thinking that the so-called Oakley contract for 1904 was an admission by the city of the value of the service ; he may have erred in supposing that the acceptance of the service without rejecting the bids precluded the city from questioning the amount charged ; but if these were errors, they were errors of judgment, not the subject of review in a taxpayer's action.

The mere fact that the price proposed to be paid is excessive does not necessarily warrant the inference of bad faith; the comptroller

is an auditing and not a contracting officer. The service having been furnished the city, the question for him to determine was whether it was better for the city to adjust the matter or have a lawsuit, and mere errors of judgment in determining that question, no matter how great, can be reviewed, if at all, only by certiorari. Of course, a case might be conceived in which the proposed payment and actual value would be so disproportionate as to be of themselves evidence of fraud, but that cannot be the case where, as here, the proposed payment is based on the same rates paid by the city pursuant to contract the preceding year, and agreed to be paid the succeeding year by a contract, the making of which the courts refused to enjoin.

Had the complaint alleged facts tending to establish that, knowing and believing that to the extent claimed said bills were not a legal or proper charge against the city, and could not be recovered by the claimants in any action or proceeding that could be brought for the purpose, and that said proposed settlement was disadvantageous to the city, the defendants had, nevertheless, collusively conspired to make such payments for the purpose and with the intent of unlawfully diverting the money of the city to the use of said claimants, and of enabling them to make an unlawful profit to the detriment of the city, a different situation would have been presented.

The argument that the proposed payment is illegal is based upon the assertion that to the extent of forty per cent of the electric lighting bills, and twenty per cent of the gas lighting bills, it is a gratuity. This argument begs the question. The statute makes the judgment of the auditing officer controlling in determining the question in the first instance. He is required to examine the matter, exercise his judgment, and determine it. The court cannot substitute its judgment for his. Instead of being illegal, his proposal to audit the bills was in the strict line of his duty. Had he refused to act, mandamus to compel action would have been a proper remedy, but no one will pretend that in such a proceeding the court would direct what the audit should be, no matter how clear the proof upon the subject, and yet we are asked to restrain him from performing an act, performance of which could be compelled but not controlled, unless he does it in a specified manner,

upon a statement of facts which do not warrant a conclusion more adverse to him than that he is likely to use poor judgment.

My conclusion is that, upon the undisputed facts disclosed by the record before us, the motion to continue the injunction should have been denied. The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

HIRSCHBERG, P. J., BARTLETT and WOODWARD, JJ., concurred; HOOKER, J., not voting.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.