CAHN v. METZ, Comptroller, et al.

(Supreme Court, Appellate Division, First Department. November 23, 1906.)

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—CONTRACTS—NECESSITY OF BIDS.

Contractors, having failed to lay satisfactory asphalt blocks in their pavement and having commenced action for the contract price, entered into an agreement with the borough president, admitting the inferior quality of the blocks and the proper act of the engineer in refusing to grant the necessary certificates, and agreeing to lay a sheet asphalt pavement in lieu of the blocks, for the balance unpaid on the original contract. *Held*, that such agreement was a new and different contract, rather than a part of the original contract, and fell within Greater New York Charter, Laws 1897, p. 148, c. 378, § 419, requiring a contract to be entered into under advertisements and sealed bids "whenever any work is necessary to be done to complete or perfect a particular job."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 854.]

2. SAME—BENEFIT TO THE CITY.

Such contract was not taken from the operation of section 419 (Laws 1897, p. 148, c. 378) by the fact that the new pavement was better than that required by the old contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 854.]

3. SAME—COMPROMISE SETTLEMENT.

The admission in the new contract of the inferior quality of the blocks, and of the proper act of the engineer in refusing to grant the necessary certificates, showed that such new contract could not be taken from the operation of section 419 (Laws 1897, p. 148, c. 378) as a compromise settlement, rather than a new contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 854.]

4. SAME—INFERIOR WORK—COMPTROLLER'S AUTHORITY TO COMPROMISE—NEW CONTRACT.

Greater New York Charter, Laws 1897, p. 41, c. 378, § 149, gives the comptroller, whose powers in the main are that of audit and settlement, authority to "settle and adjust all claims in favor of or against the corporation," and provides that in doing so he shall be governed by rules of law and equity. The charter provides explicitly for the manner of making contracts, duplicates of which shall be lodged with the comptroller to make payments thereon, on receipt of proper certificates, etc. A paving contract having been unsatisfactorily performed, the contractor, on refusal of the engineer to issue certificates, commenced action, but afterwards, with the

comptroller's approval, entered into an agreement, in a manner not provided by the charter, to lay a new pavement of different nature for the balance of the original contract price unpaid. *Held* that, even though such agreement be considered a compromise, it was beyond the authority of the comptroller to validate by his approval.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 854, 886.]

Houghton, J., dissenting.

Appeal from Special Term.

Bill for injunction by William Cahn against Herman A. Metz, as comptroller, and others. From an order continuing the injunction pendente lite, defendants appeal. Affirmed.

Argued before McLAUGHLIN, INGRAHAM, CLARKE, HOUGHTON, and SCOTT, JJ.

Patrick E. Callahan and William B. Ellison, Corp. Counsel (James G. Bell, on the brief, of counsel), for appellants.

Leo G. Rosenblatt and M. S. & I. S. Isaacs (Louis M. Isaacs, on the brief), for respondent.

CLARKE, J. The Kelley Asphalt Company in July, 1905, made a contract with the city of New York, through the president of the borough of Brooklyn, to repave Broadway, in Brooklyn from Havemeyer street to Lafayette avenue, with asphalt blocks, for the sum of $87,475.-13. During the progress of the work, and under the provisions of the contract, the company received partial payments on account thereof, known as "70 per cent. payments," to the amount of $60,942.66, leaving a balance of $26,532.47 unpaid on said contract price. The block pavement laid turning out to be of poor quality and rapidly disintegrating, the chief engineer declined to give the final certificate which would entitle the company to receive its final payments. The company thereafter brought an action against the city to recover the said amount, but before the trial an agreement in writing and under seal was entered into by and between the company and the borough president. This agreement is entitled "Supplemental Agreement Made this 19th Day of July, 1906," and it provides that:

"Whereas, a certain contract was entered into between the said parties on August 21, 1905, providing for regulating and repaving with asphalt block pavement on a concrete foundation the roadway of Broadway from Havemeyer street to Lafayette avenue in the borough of Brooklyn, together with all work incidental thereto, under which contract the parties of the second part have performed some portion of such work in a satisfactory manner, but have failed to meet the requirements of the contract and of the chief engineer of the bureau of highways representing the city of New York as to the quality and durability of the asphalt blocks provided for in said contract; and, whereas, the chief engineer has properly refused to accept as satisfactory the asphalt blocks furnished and laid on this work, and the parties of the second part have instituted an action against the city of New York to recover the sum of $26,118.29 alleged by them to be an amount due in settlement of the work required by the city under the said original contract of August 21, 1905; and, whereas, in settlement of the said action pending against the city the said parties of the second part by counsel and directly having proposed to the president of the borough of Brooklyn to remove the defective work, and to substitute a sheet asphalt pavement of an increased thickness, and to maintain said pavement for

an extended term of maintenance in place of the rejected asphalt block, and in further consideration of the sum of one dollar received and paid by each of the parties here: It is hereby mutually agreed and understood as follows."

The contract then provided for the taking up of all the blocks and mortar beds, and upon the concrete foundation lay down a pavement of sheet asphalt, and that upon the satisfactory completion of said work the city should pay the amount claimed to be due on the original contract of $26,118.29 as in settlement of all liabilities of the city in the premises. It appears that this agreement was made as the result of a conference between the representatives of the company, the borough president, certain engineers of the city, and the commissioner of public works, and was submitted to the comptroller of the city for his approval; and it was approved by him. Thereafter the company proceeded with the work of taking up the asphalt block pavement that it had laid down and of laying an asphalt sheet pavement, when this taxpayers' suit was instituted for the puurpose of obtaining a judgment declaring said agreement void, and of restraining payment of any sums of money by the city thereon, and an injunction pendente lite was granted. From the order continuing the same this appeal is taken.

The appellants claim that the agreement was properly entered into and is lawful by virtue of the provisions of section 149 of the Greater New York Charter (Laws 1897, c. 378, p. 41), which, in providing for the duties of the comptroller, says, inter alia:

"He shall settle and adjust all claims in favor of or against the corporation and all accounts in which the corporation is concerned as debtor or creditor; but, in adjusting and settling such claims, he shall, as far as practicable, be governed by the rules of law and principles of equity which prevail in courts of justice."

The comptroller is vested by law with great powers, but in the main they are powers of audit and settlement. He is not a contracting officer. The charter provides for the manner in which contracts with the city shall be made with the heads of the different departments, upon approval as to form by the corporation counsel. Duplicates of these contracts are filed in the comptroller's office. Payments thereon and settlements thereunder, upon the receipt by him of the proper evidence in the way of certificates and otherwise, are within his recognized jurisdiction. The making of city contracts is hedged about with very minute provisions of law. These have been continued for many years, in the consolidation act, and in the original charter, and its revision, of the greater city. Section 419 of the charter (Laws 1897, c. 378, p. 148) provides that:

"Whenever any work is necessary to be done to complete or perfect a particular job or any supplies needful for any particular purpose which work and job is to be undertaken or supply furnished for the city of New York, and the several parts of the said work or supply, together, involve the expenditure of more than one thousand dollars, the same shall be by contract, under such regulations concerning it as shall be established by ordinance or resolution of the board of aldermen, excepting such works now in progress as are authorized by law or ordinance to be done otherwise than by contract and, unless otherwise ordered, by a vote of three-fourths of the members elected to the board of aldermen; and all contracts shall be entered into by the appropriate bor-

-ough president, and heads of departments, and shall, except as herein otherwise provided, be founded on sealed bids or proposals, made in compliance with public notices, duly advertised in the City Record, and the corporation newspapers, and said notice to be published at least ten days."

The settled law for the city is that contracts for new work or supplies, or for the completing or perfecting of any work, when the amount involved is $1,000, shall be made by the borough president or heads of department upon public letting after due advertisement upon preliminary statements and estimates by sealed bids, and, except in exceptional cases provided for by law, to the lowest bidder. This agreement purports to have been made by the borough president of Brooklyn in behalf of the city. The amount involved is upwards of $26,000. It was either a contract for new work or a contract to perfect or complete work in a particular job. It would seem as if it came directly within the express language of the statute, and therefore was required to be made after public advertisement and upon competitive bids; there being no evidence that it was otherwise ordered by three-fourths of the members elected to the board of aldermen.

The appellants claim that this is not a new contract, or a different contract, but that it is part of the original contract, which amounted to some $86,000. But that contract was to pave this particular street with a particular kind of pavement, to wit, asphalt block; and it must have been let after due advertisement and public competition upon sealed bids, and under it the city was entitled to receive a street paved with asphalt blocks. Under this agreement it is proposed to give a street paved with sheet asphalt—an entirely different substance laid in a different manner. If the city had intended to pave this street with asphalt sheet pavement, it is quite possible that some other bidder than the Kelley Company would have obtained the contract at a much lower price than that bid for the asphalt blocks. It is no answer to the specific requirements of the statute that the city may be getting a better pavement than that provided for in the original contract. The statutes were intended to prevent the possibility of private substitution between city officials and the contractors of one material rather than another, or of one kind of construction rather than another. If the city had contracted to build a public library of a certain kind of marble, and during the progress of the work it should turn out that the marble was of poor quality, and thereupon, without public advertisement or competition, the city officials and the contractor should agree to substitute brick for marble at the same price for which they had contracted to furnish marble, could it be said that such a substitution was not in violation of the law? There is no difference here. The city contracted to get one thing for a particular price after public competition, and gets another by private agreement between the officials and the contractor, as it seems to me, in direct violation of the salutary provisions of the law.

The contention that this course of procedure can be sustained as upon the settlement of a claim does not appear to me to be sound. What was the claim that was settled? The agreement under seal disposes of that. It is therein recited that the company has failed to meet the re-

quirements of the contract and that the said chief engineer has properly refused to accept as satisfactory the asphalt blocks furnished and laid on this work. The certificate of the engineer by the contract is made a condition precedent to the right of the contractor to receive his payment, and without that certificate he cannot receive pay, unless he shows that the engineer has withheld his certificate fraudulently or unreasonably. But by this agreement the contractor admits in the most binding way—a recital in a sealed instrument—that he had failed to meet the requirements of the contract and that the engineer has properly refused to accept the work as satisfactory. If so, he had no cause of action against the city, and therefore there was no consideration for the contract.

Further, the comptroller had no power to make a settlement of this kind. As said in Hearst v. McClellan, 102 App. Div. 336, 92 N. Y. Supp. 484, the comptroller is an auditing, and not a contracting, officer, and the powers given to him to settle a claim against the city did not confer upon him any power to authorize one of the contracting officers of the city to make a contract in obvious violation of the provisions of law. We have no doubt that in this particular case the motives of all the parties to the proceeding were commendable. But the charter provisions in regard to the doing of public work are of such importance to the city that no evasion of them should be permitted, when called to the attention of the court, however innocent the acts of those violating them may appear to be.

The order appealed from should be affirmed, with $10 costs and disbursements to the respondent.

McLAUGHLIN and SCOTT, JJ., concur.

INGRAHAM, J. I concur in the affirmance of this order on the ground that the court below was justified in enjoining the comptroller from paying this claim until the question as to the validity of the supplemental contract or settlement was determined upon the trial. I do not think we should determine upon this appeal the validity of this supplemental contract or settlement, and therefore do not concur in what is said in relation thereto.

HOUGHTON, J. (dissenting). Notwithstanding the recitals of the new contract, I think it is fair to say that all that was in fact done, and all that was attempted to be done, was to permit and to compel the contractor to complete his former valid contract in a proper manner satisfactory to the city. There is no suggestion of collusion or fraud. The pavement which had been laid was defective. The new contract did not provide for the payment of any greater sum of money than was due under the old contract when it should have been fully performed. The amount stipulated by the new contract was the exact amount remaining due on the old one. All that was done was simply to bring about an adjustment of a claim under the former concededly valid contract. This adjustment might have been made by accepting the defective pavement at a reduced price, or by compelling the pavement

to be made good according to the contract, or as good as that provided by the contract, and then paying the stipulated sum. It seems to me that such an adjustment is within the powers of the comptroller, and that, in the absence of fraud or bad faith, his acts in such respect should be upheld.

The injunction should not have been granted, and the order should be reversed.