PATRICK GRACE, as a Taxpayer of the City of New Rochelle, and Others, Plaintiffs, *v.* HARRY SCOTT, Individually and as Mayor of the City of New Rochelle, etc., and Others, Defendants.*

Supreme Court, Westchester County, September 29, 1922.

Municipal corporations — taxpayer's action under General Municipal Law, § 51 — charge in complaint that street repair contracts were improperly let and that officials were derelict in enforcement of contract — contracts were properly let on unit basis for repair work — part of work was not under guaranty in contract for original work — no evidence of collusion between officials and contractors — no evidence to connect street commissioner with misappropriation of funds by employee — no evidence of any illegal acts by defendants.

In a taxpayer's action brought under section 51 of the General Municipal Law against the officials of the city and contractors, based on allegations that contracts for street repair work were improperly let and that the public officials were derelict in the enforcement of the contracts, which resulted in waste of municipal funds, the evidence established that the contracts were properly let, after advertisement and competitive bidding, to the lowest bidder.

----

* Affd., 214 App. Div. 792. See, also, 201 App. Div. 859.

The contracts, which were for repairing street pavement and which were made on the basis of cost per yard, without specifying the number of yards of repairing necessary, were legal, since it would be impossible to determine in advance the actual number of yards of work necessary to make repairs.

The evidence establishes conclusively that a part of the repair work did not come within the terms of an original construction contract in which the contractor guaranteed to keep the street in repair, and, therefore, those repairs were properly made under the unit contract for repair work.

The evidence does not show any collusion between city officials and contractors.

There is no evidence in the case to connect the street commissioner with misappropriation of city funds by an employee in his department and he is not responsible therefor.

Furthermore, the plaintiff produced no evidence whatsoever of any illegal acts on the part of the defendants in letting the contracts or in executing them.

TAXPAYER'S ACTION brought under section 51 of the General Municipal Law.

*Milion Mayer* [*Goodman Block* of counsel], for the plaintiffs.

*Charles A. Van Auken, Corporation Counsel* [*Humphrey J. Lynch* of counsel], for the city officials, defendants.

*Moore, Hall, Swan & Cunningham* [*William A. Moore* of counsel, for the defendants William Halton and others.

MORSCHAUSER, J.:

This action is brought under section 51 of the General Municipal Law by Patrick Grace against Harry Scott, individually and as mayor of the city of New Rochelle, Harry A. Archibald, as comptroller of the city of New Rochelle, John A. Hadert, individually and as commissioner of streets of the city of New Rochelle, Harry Scott, Harry A. Archibald and Joseph Zauner, as members of and constituting the board of estimate and apportionment of the city of New Rochelle, Benjamin B. Badeau, as treasurer of the city of New Rochelle, the Wilkes-Casey Engineering and Contracting Company, Inc., Tony Miele and William Halton, the three latter defendants being contractors who performed work for and furnished material to the said city of New Rochelle during the years 1920 and 1921.

Subsequent to the institution of the action, and in or about the month of June, 1922, and by an order of this court, Mrs. Helen Mayer, plaintiff's attorney's wife, and Goodman Block, his partner, were permitted to intervene as plaintiffs with the said Patrick Grace.

The plaintiffs in the amended complaint have made charges against a number of officials of the city of New Rochelle in respect to the manner in which certain contracts for the repair of the city streets were let, claiming that the provisions of the city charter were violated in that contracts were let without proper competitive bidding, and that after contracts were let, the various officials charged with the duty of enforcing the performance of the con-

tract were derelict in their duty, with the result that the city's funds were wasted and misappropriated. There is also a specific charge made against the street commissioner, John A. Hadert, to the effect that he misappropriated moneys of the street department.

It is also charged that the contractors who were named as defendants were illegally engaged with some of the city officials, and that as a result the city was required to pay excessive prices for the work done and the materials furnished, and that the taxpayers of the city of New Rochelle were damaged as a result of this action upon the part of the defendants.

Where such charges are made against public officials it is most important to the public, the taxpayers, rent payers and citizens of the municipality as well as to the defendants that a full and searching inquiry should be had to the end that if the charges are justified such offending parties should be held responsible. It is equally important that where honest and upright officials who are unselfishly serving the public, and reputable business men, are unjustly accused of wrongdoing, they should be fully exonerated of any charge made against them, if such charges fail.

In this case such a full and searching inquiry has been had. The plaintiffs were permitted by an order of the court to examine the defendants before trial and they were required, by an order of the court, to appear before the Hon. Isaac N. Mills, acting as the official referee in this judicial district, and they were required, on the application of the plaintiffs, to produce not only the records of the defendant city of New Rochelle, but also the records of the various contractors who were named as defendants.

There were numerous hearings had before the very learned referee, and voluminous testimony was taken and apparently all of the records of the defendants were placed at the disposal of the plaintiffs' counsel upon such examination, and such of them as were material were offered in evidence upon that examination before trial.

The case appeared upon the calendar of the June term of the court, and owing to the congestion of the calendar, the case was heard in the month of July. All of the evidence and documents that were offered in evidence on the examination before trial were offered and received in evidence and, in addition thereto, a large number of witnesses were called by all the parties to the action, and every latitude was extended by the court to the end that a full and complete investigation be made of the charges contained in plaintiffs' amended complaint, and in view of the fact that it was claimed by the plaintiffs that the city of New Rochelle had been imposed upon by some of the contractors in that they had improperly

repaired the streets, upon request and consent of the attorneys for the parties the court made a personal inspection of the streets of the city of New Rochelle, in order that it might, by an ocular inspection, determine the truth or the falsity of this charge.

The important questions presented in this case are: Did the street commissioner of the city have legal authority to do street repair work by contract, and were the provisions of the city charter complied with in the letting of the 1920 and 1921 contracts, and was there open and competitive bidding in the letting of said contracts?

Did the Wilkes-Casey Engineering and Contracting Company, Inc., do certain work under the 1920 contract for which it was paid which it should have done under an alleged guaranty in a former contract?

In an action of this kind can the head of a department be compelled to refund certain moneys misappropriated by an employee of such department when the head of the department in no way participated in the misappropriation or had knowledge of it?

The evidence in this case clearly establishes that in the early part of 1920 when Mayor Scott assumed the duties of his office the streets of the city were in a very bad state of repair due no doubt to the result of economy that was practiced by the previous officials of the city during the period of the work of which of course there is no criticism. The method formerly adopted by the street department was to make such repairs by the street commissioner with laborers employed in the street department. The evidence shows that a certain street, viz., Winyah avenue, had been repaired by this method the year preceding at a very high cost. The rate of wages paid laborers in the street department was four dollars and twenty-five cents. The prevailing rate of wages in the city was six dollars to six dollars and fifty cents per day. It was also established that it was with great difficulty that sufficient laborers could be obtained. With these conditions confronting Mayor Scott and his official associates, it was decided to do this street repair work by contract.

There are 105 miles of improved streets in New Rochelle, many of which were out of repair and the extent of such repairs could not be definitely determined at the time of the letting of the contracts or until the work was under way how much yardage should be done upon a given street and how much of the existing street could be retained in the interest of economy by "patching." Hence it was impossible to prepare specifications and advertisements for a definite number of yards of work of the different kinds required as could have been done if a single street were to be reconstructed. The policy adopted was wherever possible to repair

or patch the holes in the street and then to cover the same with a coat of tar and grit, commonly known as a seal or carpet coat, which sealed and preserved the street. This made it more difficult to determine with any degree of accuracy the amount of work that would be done during the season.

The commissioner of streets taking this into consideration advertised for bids based upon a unit price per yard for the several kinds of work to be done, viz., resurfacing, repairing without foundation, and repairing with foundation. Bids were received and the contracts awarded to the lowest bidder. The street repair work for the year 1920 was done under this contract without any attempt being made to criticize or enjoin this method of doing the work. During the year 1920 a certain street in the city, viz., Fourth street, necessitated repairing throughout a considerable of its length. This was known as straightaway work as distinguished from patch work. It was decided that specifications be prepared by the department of public works, then a separate department of the city government, and bids were advertised for the repair of this street with the idea in view that perhaps a better price might be obtained. Bids were received and the contract let for prices considerably in excess of what the work would have cost under the yearly contract prices.

In the spring of 1921 bids were again received for the work of that year on the same basis and the work progressed and was completed and the contractors were paid for said work according to the terms of the respective contracts.

At the time of the bringing of this action in October, 1921, the city of New Rochelle was in the midst of a political campaign. It has been strongly urged on the part of the defendants that this action emanated out of such political controversy. Whether this be so or not the rights of the taxpayers must be determined upon the evidence produced rather than any motive which may have inspired the bringing of such action.

The plaintiffs claim that the city officials acted in collusion with certain contractors to the end that said contractors might be the successful bidders. There is no testimony to support such contention. On the contrary, the evidence shows that sometime in 1920 the comptroller of the city, feeling that in the discharge of his duty as auditor, the work should be checked by someone who should represent him, employed Mr. Van Etten, an engineer of high standing, without knowledge of either the contractors or the commissioner of streets, and that at the time of such employment bills for audit were in the possession of the comptroller which had been checked up by the commissioner of streets; that this work

was rechecked by the said Van Etten with the result that the report of said Van Etten showed that the contractor was entitled to a somewhat greater yardage than that for which he had been allowed by the commissioner. It does not appear that this was due to any suspicion resting upon the contractor, but simply in the orderly conduct of the city's business.

Another element which seems to have entered the controversy is that certain members of the council seemed to think that this work should have been done under the department of public works rather than under the street department, and that the checking up should have been done by the department of public works. The evidence shows that the council requested the commissioner of public works to prepare estimates for the repair of certain streets, viz., Pelham road, between Drake avenue and Neptune avenue; Drake avenue between Pelham road and St. Joseph's street, and Church street, between Main street and Pelham road; that the council directed that these repairs be made in accordance with such estimates and requested the board of estimate to finance the same; that the mayor and the board of estimate refused to make the appropriation and directed the repairs to be done under the yearly contract with the following result: The repairs to Pelham road were done for $2,500, while the estimate therefor was $13,000; the repairs on Drake avenue were done for $3,500, while the estimate was $26,000; the repairs to Church street were done for $13,000; while the estimate was $26,000. An examination of these streets shows that they are in fairly good condition.

Further proof was offered and stands uncontradicted that the prices paid for work of the same kind in the same years done by other contractors for private corporations, individually and other municipalities in the vicinity of New Rochelle were in excess of the prices paid by the city of New Rochelle under its contracts. The repair work under these contracts on the streets of New Rochelle was examined by a number of competent roadbuilders and testified to by them to be very good work. While there were seventy-five streets repaired in 1920 and ninety streets in 1921, the experts produced at the trial by the plaintiffs criticized the repair work done on only two or three of such streets and further examination showed that such criticism was not because of any defect in the work itself.

The contracts themselves were let after proper advertising as required by the city charter and competitive bidding duly made thereon.

The awarding of the contract for doing the season's work on the unit basis was a saving to the city of New Rochelle. The

contract was a requirements contract obligating the contractor to do such work as might be required on the streets throughout the city during the respective years 1920 and 1921. It is a legal contract, and any attempt to have determined at the time of the awarding of the contract the exact amount of work to be done was impossible. To have attempted to estimate a definite quantity of work, and when that amount of work was done to have read-vertised again for further work when necessary, would undoubtedly have increased the cost of the repair work for the season.

The evidence in the case conclusively shows that the work done on Meadow lane, on Davis avenue at Bancker place, and on Farragut circle, which it is contended should have been done under a guaranty contained in the previous contract entered into between the city and the Wilkes-Casey Company in 1917 and performed by the contractor in that year under the terms of the guaranty was not such work as resulted from any defect which can be contemplated to come within the provisions of the guaranty and was properly paid for under the unit contract for 1920.

There is no evidence in this case to show or in any way to connect the defendant John A. Hadert with the misappropriation of the city's moneys made by one Samuel Uppington, an employee. Actions are now pending in the Supreme Court by the city for the recovery of the moneys misappropriated by said Uppington during the respective terms of the several street commissioners, viz., John A. Hadert, Joseph Walters and John Bettinger. (Walters, Hettinger and Uppington are not made defendants in this action.)

There is no evidence in this action that Commissioner Hadert, or any other of the defendants, personally participated in the wrongful acts of Uppington, or knew anything about it until after the misappropriation by Uppington and a very short time before he was arrested.

The corporation counsel has taken the proper course in bringing actions at law, under proper pleadings, to recover the moneys misappropriated by Uppington belonging to the city.

In the case of *Daly* v. *Haight* (170 App. Div. 469), a taxpayer's action against a supervisor and a person employed pursuant to a resolution of the town board to recover town moneys paid by the former to the latter for services rendered, the court found that there was no intentional wrongdoing by either of the defendants; that all the moneys were paid before the commencement of the action, and that the supervisor did not receive any of them, it was error to give judgment for the plaintiff.

Said JENKS, P. J. (at p. 471): " This and similar statutes (*Brill*

v. *Miller*, 140 App. Div. 605) clothe the individual taxpayer with peculiar rights. (*Hearst* v. *McClellan*, 102 App. Div. 336.) The remedy afforded is against acts done without power, or tainted with corruption, fraud or bad faith amounting to fraud. (*Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Ziegler* v. *Chapin*, 126 id. 342; *Hearst* v. *McClellan*, *supra*.) The statute authorizes an action ' to prevent any illegal official act * * * or to prevent waste or injury to, or to restore and make good, any property, funds or estate,' etc. The term 'waste or injury,' thus used, includes only illegal, wrongful or dishonest acts. (*Hearst* v. *McClellan*, *supra*, 340.) " And (at p. 474): " This statute and those like unto it do not afford the sole remedy for official wrongdoing. They provide the remedies available by a *taxpayer*. He may prevent any illegal official act or prevent waste or injury. Or he may have restored or made good the property funds or estate. But it is only when the waste or injury is by collusion or otherwise, or by the default in permitting a wrongful judgment or by retention of or failing to pay over any public funds or property, that the court shall enforce the restitution and recovery, and also, in its discretion, declare the official responsible financially therefor."

In that case the learned official referee, Judge MILLS, was a member of the court at the time and concurred in the opinion which was unanimous. (Affd., 224 N. Y. 726.)

The complaint contains various charges of illegal acts in the awarding of the several contracts as against the various city officials, particularly Street Commissioner Hadert, and as between the defendant contractors, the Wilkes-Casey Company and William Halton. The city's records of every kind bearing upon the case were produced and examined and free access given to the contractor's books and records which were subjected to the scrutiny of the plaintiffs' accountants in every way. No evidence whatsoever tending to support the charges of illegal acts or wasting of the public moneys in any way was proved which reflected upon the officials or personal integrity of any of the defendants either the city officials or contractors.

The charges of illegal and dishonest acts are not justified by the proof. During the trial the learned counsel for the plaintiffs conceded this except as to Hadert and the Wilkes-Casey Company, and I find the evidence does not support these charges against any of the defendants.

The statute is intended for the protection of the taxpayer against dishonest officials and servants and against illegal contracts with contractors and individuals and not for use as an instrument of unwarranted attacks. Honest men, when they are elected to public

office, should be protected against unfounded charges of illegal acts and wrongdoing.

I find for the defendants. Under all the circumstances, however, I do not believe costs should be allowed.

The 234 findings and the 32 conclusions of law presented by the plaintiffs have been initialed and the findings and conclusions of law presented by the defendants have been signed. If plaintiffs desire to appeal and desire sixty days to make a case, it is granted.